# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

Case No. 12-3187

## CAROL ANN SMITH
Plaintiff-Appellant

v.

## PERKINS BOARD OF EDUCATION, et al
Defendant-Appellees

On Appeal from the United States District Court
For the Northern District of Ohio, Western Division (Judge Jack Zouhary)

## APPELLANT'S REPLY BRIEF

Edward G. Kramer (0024873)
Kramer & Associates, LPA
3214 Prospect Avenue
Cleveland, Ohio 44115-2600
Tel: (216) 431-5300
Fax: (216) 431-6149

TABLE OF CONTENTS

A. THE APPELLEE'S BRIEF STATEMENT OF FACTS IS IN DISPUTE BASED ON THE RECORD BELOW ................................................................. 1

1. The retaliatory and discriminatory actions of the Defendants against Carol Smith ................................................................................................................... 1

2. The Teacher Termination Hearing did not allow for adequate discovery, or for discussion of the issues raised in Ms. Smith's statutory claims .................... 4

3. Carol Smith was unable to press her statutory claims against individual defendants in the termination hearing ....................................................... 4

4. Carol Smith's inability to bring her claims before a jury ............................... 5

5. The Decision of the Hearing Officer is Insufficient to Determine Ms. Smith's Statutory Claims ...................................................................... 5

B. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT ON CAROL SMITH'S CLAIMS BASED ON RES JUDICATA OR ISSUE PRECLUSION ....................................................................... 6

1. The Basic Premise of the Board of Education's Argument that the Finding of "Good Cause" Negates All of Carol Smith's claims is Not Valid ........ 6Error! Bookmark not defined.

2. Mrs. Smith's Federal ADA and Retaliation Claims Are Not Barred by the Teacher Termination Proceeding under O.R.C. §3319.16 ................................. 7

a. The EEOC's Own Position Rejects the District Court and Appellee's Position that the referee's Decision Bar's litigating Her Discrimination and Retaliation claims ..................................................................... 7

b. EEOC Interpretation is to be Accorded Great Deference by the Federal Courts ...................................................................................... 9

c. The Two Cases Cited in the Board's Brief *Lewis v. Humboldt Acquisition Corporation*, 2012 U.S. App. Lexis 10618, 2012 Fed. App. 0155P (6th Cir. May 25, 2012) and *Gross v. FBL Financial Services*, 557 U.S. 167 (1991) Do Not Involved Issue Preclusion and Are Therefore Inapplicable to this Issue ........ 11

d. All Federal Courts of Appeal to Decide on the Applicability of Elliott to ADA and Retaliation Claims Support Mrs. Smith's Position and Rejects the Boards Arguments.................................................................................................. 12

e. Carol Smith's Ohio Age Discrimination Claim is Not Barred by the Section 3319.16 Hearing Finding of Just Cause ............................................................ 14


C. THE DISTRICT COURT'S GRANTING OF SUMMARY JUDGMENT ON CAROL SMITH'S AMERICANS WITH DISABILITIES ACT AND INTENTIONAL INFLICTION OF EMOTION DISTRESS CLAIMS WERE WITHOUT PROPER NOTICE, VIOLATED RULE 56 REQUIREMENTS AND CONSTITUTES A DENIAL OF DUE PROCESS. ................................. 18

1. The District Court Failed to Give Any Notice of the Intent to Rule on Alternative Grounds on Board's Summary Judgment Motion. ...................... 18

2. Even the Board's Own Sixth Circuit Precedent Supports Reversal of the District Court Granting on Alternative Grounds than the Board's Summary Judgment Motion. ...................................................................................... 19

3. Carol Smith was prejudiced by the District Court Granting on Alternative Grounds than the Board's Summary Judgment Motion.................................. 21

4. Carol Smith was prejudiced by the District Court granting on alternative grounds than the Board's Summary Judgment Motion Her intentional infliction of emotional distress claim against Defendants Gunner and Finn............................................................................................................24

D. CONCLUSION........................................................................................ 32

CERTIFICATE OF SERVICE........................................................................ 33

CERTIFICATE OF COMPLIANCE............................................................... 34

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ...... 35

TABLE OF AUTHORITIES
CASES

Adam v. Saenger, 303 U.S. 59, 64, 58 S.Ct. 454, 457, 82 L.Ed. 649 (1938) .....17

American Nurses Association v. State of Illinois, 783 F.2d 716, 729 (7th

Cir.1986).................................................................................. 23

Arnett v. Kennedy, 416 U.S., at 166-167, 94 S.Ct., at 1650-1651 id., at 211, 94

S.Ct., at 1672.......................................................................17, 18

Coleman v. General Motors Corp. (D.C.E.D.Mo.1980), 24 FEP Cases 1350.....7

Censullo v. Brenka Video, inc., 989 F.2d 40 (1st Cir 1993).......................30

Ely v. Wal Mart, Inc., 875 F. Supp. 1422 (C.D. Cal. 1995).......................31

Employers Ins. of Wausau, 69 F.3d at 98 (6th Cir 1995)..........................21

Epps v. Continental Can Co. (D.C.M.D.N.C.1980), 24 FEP Cases 26............7

Excel Energy, Inc. v. Cannelton Sales Co.246 Fed.Appx. 953, Slip Op.at *6,

2007 WL 2426436 (6th Cir. 2007) ..........................................20, 21

Featherstone v. Columbus Public Schools, 39 F. Supp. 2d 1020

(S.D. Ohio1999)....................................................................11

Fed. Express Corp. v. Holowecki, 552 U.S. 389, 399 (2008) .....................55

Frazier v. Carraway Methodist Med. Ctr.(D.C.N.D.Ala.1980), 24 FEP Cases

1512...............................................................................................7

Garner v. Potomac Electric Power Co. (D.C.D.C. 1980), 23

EPD para. 31 ,15.......................................................................... 7

GBJ Corp., 139 F.3d at 1080 (6th Cir. 1995)........................................21

Goodson v. McDonough Power Equip., Inc. (1983), 2 Ohio St.3d 193, 201,

2 OBR 732, 443 N.E.2d 978 ...........................................................15

Gordon v. Matthew Bender & Co., Inc., 562 F. Supp. 1286, (N.D. Ill. 1983)...29

Gross v. FBL Financial Services, 557 U.S. 167 (1991) .............................11

Gupta v. IBM Corp. (D.C.Md.1980), 23 EPD para. 30,936.........................7

Herm v. Stafford, 663 F.2d 669, 684 (6th Cir.1981)...............................21

Jackson v. Board of Educ. of Memphis City Schools of Memphis, Tenn., ---

Fed.Appx. ----+, 2012 WL 3326305, *5+ (6th Cir. 2012............................10

Johnson v. Univ. of Cincinnati, 215 F.3d 561, 580 (6th Cir.2000) cert. denied,

531 U.S. 1052, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000)...........................10

Joseph v. Athanasopoulos, 648 F.3d 58, 64 n. 6 (2d Cir.2011) ...................13

Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466, (1982)..............14,15

*Lewis v. Humboldt Acquisition Corporation*, 2012 U.S. App. Lexis 10618, 2012

Fed. App. 0155P (6th Cir. May 25, 2012) ...............................................11

Logan v. Zimmerman Brush Co. 455 U.S. 422, 432 (1982) ............................17

Medeiros v. City of San Jose, 188 F.3d 514 (9th Cir.1999).........................13

Malone v. Safeway Stores, *Inc.*, 698 F. Supp. 207 (D. Or. 1987) .....................31

Metcalf v. Omaha Steel Castings Co. (D.C.Neb.1981), 25 FEP Cases 16..........7

*Meyer v. AmerisourceBergen Drug Corp.*,264 Fed.Appx. 470 Slip op *8, 2008

WL 397412 (6th Cir. 2008).........................................................19

Meyer v. United Parcel Serv., Inc., 909 N.E.2d 106 (2009) .......................16

Morgan v. Mariemont District Board of Education, 1983 WL 5204 (Ohio App.

1983.........................................................................16

New America Shipbuilders, Inc. v. United States, 871 F.2d 1077, 1081

(Fed.Cir.1989); ...............................................................23

Pernice v. City of Chicago, 237 F.3d 783, 787 n. 5 (7th Cir.2001) ...............12

Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil

Rights Commission, 66 Ohio St.2d 192, 199 n4 (Ohio 1981).......................7

Porter v. Nossen, 360 F.Supp. 527, 528 (M.D.Pa.1973) ...........................17

Reflectone, Inc. v. Farrand Optical Co., Inc., 862 F.2d 841, 843–44

(11th Cir.1989) ...............................................................23

Shanklin v. Dow Chemical Co.(D.C.M.D.La.1980), 494 F.Supp. 351................7

Shannon v. MTA Metro-North R.R., 269 A.D.2d 218, (1st Dep't 2000)  (S.D.

1992), on reh'g, 491 N.W.2d 467, (S.D. 1992).....................................30

Shelby County Health Care Corp., 203 F.3d at 926 (6TH Cir 2006)..............20

Smith v. Perkins Bd. Of Educ, 2012 WL 112606 Slip Op *4

 (N.D.Ohio 2012).............................................................16

Stone v. Dep't of Aviation, 290 F. App'x 117, 123 n. 3 (10th Cir.2008).........13

Tetro, 173 F.3d at 994 cert. denied, 510 U.S. 905 (1993)..........................28

Thomas v. Contoocook Valley Sch. Dist., 150 F.3d 31, 41-42 (1st Cir.

1998).......................................................................9,12

Thompson v. Wing (1994), 70 Ohio St.3d 176, 183, 637 N.E.2d 917.............15

Tolefree v. City of Kansas City, Mo., 980 F.2d 1171, 1175 (8th Cir. 1992) cert.

denied, 510 U.S. 905 (1993) ................................................9

Turcar, LLC v. I.R.S. 451 Fed.Appx. 509, Slip Op. at *4 2011 WL 6224533 (6th

Cir. 2011).................................................................19

United States of America, acting Through the Small Business Association v.

Light, 766 F.2d 394, 397 (8th Cir.1985)...............................................................23

United States v. Utah Construction and Mining Co., 384 U.S. 384 (1966)......16

University of Tennessee v. Elliott, 478 U.S.788,(1986)..............................11,12

Vitek v. Jones, 445 U.S. 480, 491, 100 S.Ct. 1254, 1263, 63

L.Ed.2d 552 (1980)..................................................................................17, 18

Wasek v. Arrow Energy Services, Inc. 682 F.3d 463, 469 (6th Cir. 2012)......10

Weir v. Anaconda Co., 773 F.2d 1073, 1081 (10th Cir.1985).....................23

Whitfield v. City of Knoxville, 756 F.2d 455, 463 (6th Cir. 1985)...............9

Yeager v. Local Union 20, Teamsters, 6 Ohio St.3d 369 (1983)...............25,31

U.S. Constitution .......................................................................................

U.S. Const. Art. IV, cl. 1..........................................................................14

Title VII of the  Civil Rights Act 1964.....................................................

Federal Statutes, Rules and Regulations...................................................

42 U.S.C. § 1983 ........................................................................................

28 U.S.C. 1738...................................................................................14,15,17

FRCP 56.........................................................................................18,22

FRCP 56(d).......................................................................................22, 23

FRCP 15 (c )................................................................................25

FRCP 12 (b) (6)...........................................................................25

EEOC Compliance Manual § 902.2(c)(5),........................................7, 8,9

Statutes .........................................................................................

O O.R.C.§3319.16....................................................................1,16,17

O.R.C. § 4112.14 ( C )...................................................................16

Treatises Law Review ........................................................................

10 Wright, Miller, and Kane, Federal Practice and Procedure §

2740 (1983)..............................................................................23

Reinstatement of Law 2d *Torts* (1965), 71 Section 46 (1)...........25, 26, 27, 31

## A. THE APPELLEE'S BRIEF STATEMENT OF FACTS IS IN DISPUTE BASED ON THE RECORD BELOW

This matter comes before this Court without the benefit of any discovery or depositions being taken by Mrs. Carol Smith. Discovery was postponed because of discovery disputes over issues of the extent that Board members could be asked questions regarding issues discussed involving Mrs. Smith when they were in executive sessions. The District Court had requested briefings on this issue which were still pending when summary judgment was granted in this matter. Discovery was also postponed after the Board of Education filed their Motion for Summary Judgment based solely on  Issue and Claim Preclusion of the Teacher Termination findings under Ohio Revised Code § 3319.16. The District Court had indicated it would revise its discovery schedule in the CMC after these two matters had been resolved. The granting of summary judgment, of course, made such a revision moot.

The status of this case means that many of the facts alleged by both parties have not been tested in either the courtroom or by deposition. Ms. Smith challenges the accuracy and veracity of some of the facts alleged by the Appellee in their brief.

### 1. The retaliatory and discriminatory actions of the Defendants against Carol Smith.

Carol Smith's Type 2 diabetes, along with difficulties seeing and walking,

had deteriorated significantly enough by 2008 to render her disabled. (RE # 22: Affidavit of Carol Smith at ¶¶ 7, 8, 9, 10, and 34 B). Ms. Smith disabilities existed prior to the 2008 disciplinary hearings. It was only after this point that her disabilities were severe enough to warrant accommodation; therefore the September 30, 2008 letter was sent by her explaining her disability to the Board. The subsequent letter by her attorney was in response to the unwarranted actions, of Principal Finn, who ignored the prior letter, reprimanded Ms. Smith, and scheduled a disciplinary hearing. The letter explained that Ms. Smith's symptoms of diabetes, could cause periods where she may *appear* to be sleeping, indicated that the *only* time Ms. Smith slept, was a ten minute nap in an *unoccupied* classroom, hardly warranting discipline; and entirely dissimilar from claims which the suspensions were allegedly based on.

Though the Defendant agreed to accommodations, they did not implement them, but used her disability as a means to discipline her. At the time of these issues Carol Smith was the oldest teacher in the school system and had been working there for over thirty-two years! Superintendent James Gunner stated in his November 18, 2008 letter, that should Ms. Smith still suffer the effects from her disabilities, she would be further disciplined.

There is no evidence in the record that the Board attempted to assist this long time employee. The denial of Ms. Smith's request that if her diabetes

rendered her as being of asleep, a teacher confirm this, made it much easier to further discipline Ms Smith despite the alleged accommodations provided. This denial deprived Ms. Smith independent professional judgment, leaving her at the mercy of the Defendants' who desired to get rid of this teacher, because as Mr. Gunner told Mrs. Smith her salary would pay for 2 1/2 new entry level teachers. Further, the Board refused to provide all the requested accommodations made by Mrs. Smith. More importantly, they did not implement the requests that were granted to her. Instead they began to retaliate and closely monitor her to force her resignation or build up a case for termination.

James Gunner and Principal Stephen P. Finn, placed Mrs. Smith under a microscope of scrutiny by administrators, teachers, and students. (RE #22 Affidavit of Carol Smith at ¶¶ 21-23, 26, 29-33, 36, 40 and 41). Mrs. Smith was also placed into situations designed to generate discipline. She was forced to teach classes in opposite ends of the building, and allowed only four-minutes to commute between them. Carol Smith's disabilities often prevented this, causing her to be tardy. (Id. at ¶ 34). Complaints that she fell asleep, when in reality her disabilities made it appear so, caused her to be suspended without pay from August 25, 2009 to September 11, 2009. (Id. at ¶ 36).  On March 29, 2010 after discussing Playboy and Playgirl magazines in relation to a history class she was again suspended and subsequently terminated. (Id. at ¶ 37-38).

**2. The Teacher Termination Hearing did not allow for adequate discovery, or for discussion of the issues raised in Ms. Smith's statutory claims.**

The fact that the termination hearing took four days, was heard by a neutral referee, and contained 129 separate evidence exhibits, and allowed Ms. Smith to be represented by counsel, is irrelevant. These factors did not change the fact that Ms. Smith's hearing dealt *solely* with her Collective Bargaining agreement, making it an insufficient forum for Ms. Smith's statutory and common law claims which could only be heard in court.

Any discovery held by the parties was strictly limited to evidence and documents within that sphere of her collective bargaining agreement. Additionally, the referee specifically, limited the Termination Hearing to issues involving the collective bargaining agreement. Carol Smith was not allowed to advance her claims against Principal Finn and Superintendent Gunner. Though facts regarding Ms. Smith's diabetes and other disabilities were discussed, the discussion was limited to her collective bargaining determination. They were not discussed in conjunction with the statutory claims.

**3. Carol Smith was unable to press her statutory claims against individual defendants in the termination hearing.**

The termination hearing was confined to the rules contained in Carol Smith's Collective Bargaining Agreement, and addressed whether Carol Smith's termination was for just cause. Mrs. Smith was only able to confront her employer,

4

the Perkins Board of Education. James Gunner, and Stephen P. Finn only appeared as witnesses for the Board of Education. They did not appear *as individual defendants*, allowing for confrontation on issues that were to be presented in her federal lawsuit. James Gunner and Stephen Finn's cross-examination for example, was for the purpose of showing Ms. Smith's termination was without just cause. It was not for the purpose of prosecuting a statutory or common law claims against them. Therefore, Ms. Smith was denied the opportunity to prosecute the claims underlying her federal lawsuit.

4. *Carol Smith's inability to bring her claims before a jury.*

Only the referee, Harry Taitch, was allowed to hear testimony and examine evidence presented by Carol Smith. As a result of the forum, Carol Smith was denied her constitutional right to bring her claims before a jury. This was available to her by filing this federal lawsuit.

5. **The Decision of the Hearing Officer is Insufficient to Determine Ms. Smith's Statutory Claims.**

The Referee's conclusion was that Mrs. Smith was terminated "for good and just cause." All of his examination and weighing of testimony focused on that issue. This was his limited jurisdiction based on the Ohio Teacher Termination statute.

Mrs. Smith could not, like in her federal lawsuit, *raise the theory of "mixed motives" of the Board to show that but for discriminatory and retaliatory conduct*

*she would never had been subjected to this termination procedure*.  The referee

had no statutory authority to consider these statutory and common law claims, nor

could he make any conclusions regarding those issues. Additionally, because Ms.

Smith was unable to conduct the level of discovery necessary for the prosecution

of her claims this forum was inadequate. His conclusions, as they relate only to

termination, do not address any statutory or common law claims and therefore

should not be relevant to this appeal.

**B.    THE DISTRICT COURT ERRED IN GRANTING SUMMARY
        JUDGMENT ON CAROL SMITH'S CLAIMS BASED ON RES
        JUDICATA OR ISSUE PRECLUSION**

> **1.    The Basic Premise of the Board of Education's Argument that the
>         Finding of "Good Cause" Negates All of Carol Smith's claims is
>         Not Valid**

The Board's brief references throughout the argument that " [a] finding that

'good and just cause' was present necessarily negates the possibility that the

termination was for improper, unjust reasons related to discrimination or

retaliation". This is simply legally wrong under both Ohio and Federal law.

[Appellee's Brief p.25] It is interesting that the Board's brief fails to cite one case in

support of this basic position or attempt to distinguish the numerous cases cited in

Mrs. Smith's Merit Brief that "[t]he cases are legion in which an allegedly

discriminatory dismissal has been found to be a dismissal for just cause. See e. g.,

6

*Metcalf v. Omaha Steel Castings Co.* (D.C.Neb.1981), 25 FEP Cases 16; *Frazier* v.

*Carraway Methodist Med. Ctr.*(D.C.N.D.Ala.1980), 24 FEP Cases 1512; *Coleman*

v. *General Motors Corp.* (D.C.E.D.Mo.1980), 24 FEP Cases 1350; Shanklin v.

Dow Chemical Co. (D.C.M.D.La.1980), 494 F.Supp. 351; *Epps* v. *Continental*

*Can Co.* (D.C.M.D.N.C.1980), 24 FEP Cases 26; *Garner* v. *Potomac Electric*

*Power Co.* (D.C.D.C. 1980), 23 EPD para. 31 ,158; *Gupta* v. *IBM Corp.*

(D.C.Md.1980), 23 EPD para. 30,936." *Plumbers & Steamfitters Joint*

*Apprenticeship Committee* v. *Ohio Civil Rights Commission,* 66 Ohio St.2d 192,

199 n4 (Ohio 1981) [Appellant's Brief p.28]

Since the Board's basic premise is legally incorrect the additional arguments

made based on it must fail. The finding by the Referee in the Teacher Termination

Proceeding cannot bar Carol Smith's litigating her other claims that were never

reached in that decision,

**2.     Mrs. Smith's Federal ADA and Retaliation Claims Are not Barred by
the Teacher Termination Proceeding under O.R.C. §3319.16.**

a. *The EEOC's Own Position Rejects the District Court and Appellee's
Position that the Referee's Decision Bar's litigating Her Discrimination
and Retaliation claims.*

The EEOC's Compliance Manual provides interpretations of the law,

including applying preclusion or judicial estoppel, for EEOC employees charged

with investigating discrimination claims. EEOC Compliance Manual § 902.2(c)(5),

7

http://www.eeoc.gov/policy/docs/threshold.html#2-VI (accessed on September 19, 2012) (citations omitted). The Compliance Manual was last updated on November 21, 2009.

Relevant to Mrs. Smith's claims the EEOC instructs its employees that "[a] state or federal agency decision that has not been reviewed by a court is not preclusive. Likewise, an unreviewed decision by an arbitrator or an unreviewed grievance decision is not preclusive."Id. ***This is the specific factual circumstances found in this case.***

In discussing issue preclusion the EEOC cites to the following example:

> Issue preclusion, also known as "collateral estoppel," applies to an issue that was actually litigated in a prior state or federal court proceeding, and prevents litigation of the same issue in a subsequent proceeding. For instance, if it was determined by an unemployment compensation board that there was "cause" for termination, and that determination was reviewed by a state court, then that issue cannot be relitigated. However, a claimant can produce evidence of a mixed motive in the subsequent proceeding.[FN234]

> Example - CP was discharged by Respondent, and appealed his removal to a state personnel board. **The board found that the removal was justified for unsatisfactory performance.** The board's decision was upheld by a state court, which lacked jurisdiction to consider new issues. CP filed an EEOC charge alleging that his discharge was based on race. CP would be precluded from relitigating whether his discharge was based on satisfactory performance; however, **he could still try to establish, under a mixed-motive analysis, that his**

**discharge was also based on unlawful discrimination.**
[emphasis added] Id. [1]

b.   **EEOC Interpretation is to be Accorded Great Deference by the Federal Courts**

The United States Supreme Court has expressly recognized the usefulness of

the EEOC Compliance Manual. *Fed. Express Corp. v. Holowecki*, 552 U.S. 389,

399 (2008) (citing cases and noting the EEOC's compliance manuals, though not

binding on the courts, "reflect 'a body of experience and informed judgment to

---

[1]   It is important to note that unlike the example, Mrs. Smith's teacher termination decision was not reviewed by the Ohio courts. This strengthens her position since the EEOC would still allow her to litigate her discrimination and retaliation claims even though affirmed by a state court. The EEOC Manual cites for legal support the following case law: " FN232. E.g., Tolefree v. City of Kansas City, Mo., 980 F.2d 1171, 1175 (8th Cir. 1992) (administrative board did not consider discrimination or retaliation issue because it was limited to reviewing whether the dismissal was justified, and on appeal to state court, claimant was not permitted to raise any new issues), cert. denied, 510 U.S. 905 (1993). FN233. E.g., Whitfield v. City of Knoxville, 756 F.2d 455, 463 (6th Cir. 1985) (claim preclusion did not bar ADEA action in federal court where plaintiff could not have raised ADEA claim in state court proceedings due to statutory waiting period for filing ADEA claim).***FN234. E.g., Thomas v. Contoocook Valley Sch. Dist., 150 F.3d 31, 41-42 (1st Cir. 1998) (state court finding that claimant was dismissed with "sufficient cause" does not preclude claim that termination was also motivated by disability discrimination). [emphasis added].*** EEOC Compliance Manual § 902.2(c)(5), http://www.eeoc.gov/policy/docs/threshold.html#2-VI (accessed on September 19, 2012)  The *Thomas* decision involved an ADA claim where the First Circuit found no bar to litigating the claim even though the agency had found just cause for the dismissal of a teacher. This case was cited in Mrs. Smith's Brief, but was ignored and not distinguished by the Board in its Brief. [Appellant's Brief p.26 n.2]

which courts and litigants may properly resort for guidance.")  This Court has

made an even stronger finding on the deference court's should make to the Manual.

In *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 580 (6th Cir.2000) *cert. denied,*

531 U.S. 1052 (2000) a panel of the Sixth Circuit held that:

> Pursuant to the Supreme Court's directive, the EEOC's
> interpretation of Title VII is to be given "great deference" by
> the courts. *See Griggs v. Duke Power Co.,* 401 U.S. 424, 434,
> 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *see also Tetro,* 173 F.3d
> at 994 (relying upon the EEOC's interpretation of Title VII in
> support of the Court's holding); *Ladd v. Sertoma Handicapped
> Opportunity Program, Inc.,* 917 F.Supp. 766, 767
> (N.D.Okla.1995) (finding that "[a]lthough not binding on this
> Court, the EEOC's position on a subject squarely within its
> field of expertise is significant").

The *Johnson* position has been cited by two other panels of this Court within

the last three months in *Jackson v. Board of Educ. of Memphis City Schools of

Memphis*, Tenn., --- Fed.Appx. ----+, 2012 WL 3326305, *5+ (6th Cir. 2012) and

*Wasek v. Arrow Energy Services, Inc.* 682 F.3d 463, 469 (6th Cir. 2012). It is good

law which should be followed by this Court regarding how to apply issue and

claim preclusion to Mrs. Smith's ADA and Retaliation claims.

c.  ***The Two Cases Cited in the Board's Brief Lewis v. Humboldt
Acquisition Corporation, 2012 U.S. App. Lexis 10618, 2012 Fed.
App. 0155P (6th Cir. May 25, 2012) and Gross v. FBL Financial
Services, 557 U.S. 167    (1991) Do Not Involve Issue Preclusion
and Are Therefore Inapplicable to this Issue***

The Board's brief takes several pages to *discuss Lewis v. Humboldt*

*Acquisition Corporation*, 2012 U.S. App. Lexis 10618, 2012 Fed. App. 0155P

(6th Cir. May 25, 2012) and *Gross v. FBL Financial Services*, 557 U.S. 167 (1991)

in relation to their argument that Mrs. Smith claims are barred because of the

teacher termination decision by Referee Harry Taitch. (Appellee's Brief pp. 31-34)

The Board uses these cases in an attempt to distinguish *University of Tennessee v.*

*Elliott,* 478 U.S.788, (1986).

The problem with this legal scholarship is that neither of these cases

involves the basis for the District Court granting summary judgment in this matter.

Neither of the cases involves issue nor claim preclusion so the Board is attempting

to bootstrap an argument from cases that did not face the question involved in this

appeal!  The Board is attempting to create a distinction that no other court has

found regarding Title VII and the ADA. In fact, the only other case cited by the

Board to distinguish *Elliott and Astoria Federal Savings & Loan Association v.*

*Solimino*, 501 U.S. 104 (1991) (proposition that "common-law doctrines of

collateral estoppel" do not apply to ADEA claims.), is *Featherstone v. Columbus*

*Public Schools,* 39 F. Supp. 2d 1020 ( S.D. Ohio1999). *Featherstone* also does not

11

involve an ADA, ADEA or Retaliation claim.  Mrs. Smith's Brief distinguishes this decision pointing out, in part, that the decision was based on Sections 1981 and 1983 claims making it consistent with the *Elliott* holding.  (Appellant's Brief pp. 28-29)

While the argument is novel, the decisions simply do not support the Board's position that *Elliott* and *Hillman v. Shelby County Government*, 297 Fed.Appx. 450, 2008 WL 4602245 (6th Cir. 2008) somehow do not apply in the context of Mrs. Smith's ADA and Retaliation claims.

    d.    ***All Federal Courts of Appeal to Decide on the Applicability of Elliott to ADA and Retaliation Claims Support Mrs. Smith's Position and Rejects the Board's Arguments***

The effect of the Referee Harry Taitch's unreviewed findings on Carol Smith's ADA and Retaliation claims requires the same answer as given in *Elliot* and *Astoria Federal*.  The ADA, Retaliation and the ADEA uses the same enforcement procedures as Title VII, so *Elliott's* reasoning should apply to ADA claims. Every federal circuit Court of Appeals that has addressed the issue has taken this position.[2] See, e.g., *Pernice v. City of Chicago,* 237 F.3d 783, 787 n. 5 (7th Cir.2001) ("Because Title I of the ADA incorporates the same deferral procedures [as Title VII], Elliot's reasoning applies equally to ADA cases."); *Thomas v. Contoocook Valley Sch. Dist.*, 150 F.3d 31, 39 n. 5 (1st Cir.1998) ("the

---

[2] Mrs. Smith's brief cited several of these decisions, but the Board's brief makes no attempt to distinguish them from *Elliott*. (Appellant's Brief p. 26 n.2)

ADA incorporates the same Title VII deferral procedures ... on which the Supreme Court relied in ... Elliott; therefore, those holdings apply with equal force in the ADA context."); *Joseph v. Athanasopoulos*, 648 F.3d 58, 64 n. 6 (2d Cir.2011) ("we are aware of no distinction between [Title VII and the ADA] that would require affording a state court judgment a different preclusive effect"); *Stone v. Dep't of Aviation*, 290 F. App'x 117, 123 n. 3 (10th Cir.2008); *Medeiros v. City of San Jose*, 188 F.3d 514 (9th Cir.1999) (unpublished table decision).

Further, as was discussed in detail in the Appellants Merit Brief infra at pp. 23-25 the Referee specifically ruled that he could not address any other issues than the CBA just cause for dismissal question. This Court should not ignore the weight of authority holding that unreviewed state administrative decisions cannot have preclusive effect on ADA, Retaliation and ADEA claims. And given the similarity between the deferral procedures in Title VII and the ADA, this Court is urged to extend *Elliott's* reasoning to these other type of claims as the First, Second, Seventh, Ninth and Tenth Circuits have already held. This Court should reverse the District Court and hold that an Ohio Teacher Termination's findings do not preclude Mrs. Smith from litigating the reasons for her firing as they relate to the ADA, ADEA and Retaliation claims.

e.    ***Carol Smith's Ohio Age Discrimination Claim is Not Barred
by the Section 3319.16 Hearing Finding of Just Cause***

The Full Faith and Credit Clause, U.S. Const. Art. IV, cl. 1, applies only to

"the public Acts, Records, and Judicial Proceedings of every other State."

Congress extended the reach of Full Faith and Credit to include federal court

proceedings in its implementing statute, 28 U.S.C. § 1738, which states that ""acts,

records and judicial proceedings shall have the same full faith and credit in every

court within the United States ... as they have by law or usage in the courts of such

State ... from which they are taken."

In *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466, (1982), the

Supreme Court specifically considered the interplay between section 1738 and

Title VII. The plaintiff had lost his discrimination claim before the New York State

Division of Human Rights, the agency responsible for enforcing New York's anti-

discrimination law. The agency's decision was affirmed by an administrative

appeal board as well as the Appellate Division of the New York Supreme Court.

The federal district court held that the agency decision barred the plaintiff's

subsequent Title VII action as a matter of claim preclusion, and the court of

appeals affirmed. The Supreme Court agreed that the Title VII claim was barred,

rejecting the plaintiff's argument that Congress intended Title VII to be exempt

from the requirements of section 1738. In a footnote, however, the Court noted that

section 1738 and state rules of preclusion would not apply to "unreviewed

administrative determinations by state agencies." *Kremer,* 456 U.S. at 470 n. 7 The

Court reasoned:

> Since it is settled that decisions by the EEOC do not preclude
> a trial de novo in federal court, it is clear ***that unreviewed
> administrative determinations by state agencies also should
> not preclude such review even if such a decision were to be
> afforded preclusive effect in a State's own courts.***

Id. (emphasis added).

There are several fundamental flaws in the Appellees' argument that the

District Court was correct in granting summary judgment on Mrs. Smith's age

discrimination claim. First, even under Ohio law, collateral estoppel only applies

when the fact or issue (i) was actually and directly litigated in the prior action, (ii)

was passed upon and determined by a court of competent jurisdiction, and (iii)

when the party against whom collateral estoppel is asserted was a party in privity

with a party to the prior action." *Thompson v. Wing* (1994), 70 Ohio St.3d 176,

183, 637 N.E.2d 917; see also *Goodson v. McDonough Power Equip., Inc.* (1983),

2 Ohio St.3d 193, 201, 2 OBR 732, 443 N.E.2d 978 ("an absolute due process

prerequisite to the application of collateral estoppel is that the party asserting the

preclusion must prove that the identical issue was actually litigated, directly

determined, and essential to the judgment in the prior action").

Next, is that no Ohio Court has ruled on the impact of the limited

jurisdiction granted to the Referee under Ohio Revised Code § 3319.16[3] which

prevented Carol Smith from raising a claim that her termination was based on age

discrimination. (Appellant's Brief pp.20-25). Unlike, arbitration or grievance

hearings which are not restricted on defenses or claims that can be reached; the

teacher termination hearing does not allow such additional claims to be heard. [The

*Report and Recommendation of The Referee* stated that the question of whether

good and just cause existed for Mrs. Smith's termination was the *only* issue

addressed. (RE #18 Affidavit/Declaration of James Gunner Ex. C p. 3)]. For this

reason, the application of *Meyer v. United Parcel Serv., Inc.*, 909 N.E.2d 106

(2009) is an open question. For the reasons discussed in the Appellant's Merit

Brief cited above, Mrs. Smith urges that the § 3319.16 hearing was not an

"functional equivalent" to an arbitration hearing to invoke the operation of

O.R.C. § 4112.14 ( C ).

Finally, the Board's brief rejects Mrs. Smith's argument that the District

Court erred in not analyzing the factors outlined in *United States v. Utah*

---

[3] The District Court's opinion recognized that the <u>Section 3319.16</u> hearing afforded
to Carol Smith is <u>not</u> an "arbitration" proceeding. *Smith v. Perkins Bd. Of Educ*,
2012 WL 112606 Slip Op *4 (N.D.Ohio 2012). This Ohio law is a special statutory
proceeding which is not governed by the Ohio Rules of Civil Procedure. *Morgan <u>v.</u>*
*<u>Mariemont District Board of Education, 1983 WL 5204</u>* (Ohio App. 1983).

*Construction and Mining Co.,* 384 U.S. 384 (1966) to determine if federal common

law preclusion principles should apply to her age discrimination claim. (Appellee's

Brief p.28) The Board's position fails to recognize that federal law, not state law,

ultimately governs the question of what constitutes a "court" within the meaning of

section 1738. Section 1738 is a federal statute, and as such its interpretation is a

matter of federal law. *Porter v. Nossen*, 360 F.Supp. 527, 528 (M.D.Pa.1973)

(citing *Adam v. Saenger*, 303 U.S. 59, 64, 58 S.Ct. 454, 457, 82 L.Ed. 649 (1938)).

Section 1738 requires the federal courts to determine whether the conditions for

preclusion exist as a matter of federal law. This Court must determine whether the

Referee appointed under Ohio Revised Code § 3319.16 is a court for purposes of

section 1738. Finally, the state cannot take away Mrs. Smith's right to litigate an

age discrimination claim by forcing her into an administrative procedure that does

not permit such a claim to be heard. *Logan v. Zimmerman Brush Co.* 455 U.S. 422,

432 (1982) [4]

---

[4] Id. at 432 "Each of our due process cases has recognized, either explicitly or implicitly, that because "minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." *Vitek v. Jones*, 445 U.S. 480, 491, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980). See *Arnett v. Kennedy*, 416 U.S., at 166-167, 94 S.Ct., at 1650-1651 (POWELL, J., concurring in part); *id.*, at 211, 94 S.Ct., at 1672 (MARSHALL, J., dissenting). Indeed, any other conclusion would allow the State to destroy at will virtually any state-created property interest. The Court has considered and rejected such an approach: " 'While the legislature may elect not to

C.   **The District Court's Granting of Summary Judgment on Carol Smith's Americans with Disabilities Act and Intentional Infliction of Emotion Distress Claims Were Without Proper Notice, Violated Rule 56 Requirements and Constitutes a Denial of Due Process.**

    1.   **The District Court Failed to Give Any Notice of the Intent to Rule on Alternative Grounds on Board's Summary Judgment Motion.**

The Board's brief begins its discussion that there had been recent amendments to Rule 56. The Board cites to the Advisory notes that:

> The 2010 amendments to Federal Civil Rule 56(f) expressly allow a District Court, **after giving notice and reasonable time to respond, to grant summary judgment on grounds not raised by a party, or consider summary judgment on its own after identifying for the parties facts that may not be genuinely in dispute.** These provisions "bring into Rule 56 text number related procedures that have grown up in practice." Advisory Committee Notes on Amendments to Rule 56 Subdivision (f).

(Appellee's Brief p. 44) emphasis added.

These amendments do not support the District Court's action of granting sua sponte --without notice or reasonable time for Mrs. Smith to respond-- summary judgment on the merits of the intentional infliction of emotional distress and ADA claims.  A review of the summary

---

confer a property interest, ... it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.... [T]he adequacy of statutory procedures for deprivation of a statutorily created property interest must be analyzed in constitutional terms.' " *Vitek v. Jones*, 445 U.S., at 490-491, n.6, 100 S.Ct., at 1262-1263 n.6, quoting *Arnett v. Kennedy*, 416 U.S., at 167, 94 S.Ct., at 1650 (opinion concurring in part)."

judgment pleadings will show that neither party ever briefed the District

Court on the substantive issues. This is not surprising since discovery

had been postponed until after a ruling on a discovery dispute and the

Board's summary judgment based on the preclusion of the teacher

termination decision.

2.    **Even the Board's Own Sixth Circuit Precedent Supports Reversal of the District Court Granting on Alternative Grounds than the Board's Summary Judgment Motion.**

The Board's brief cites to a series of Sixth Circuit cases which stand for the

proposition that the granting sua sponte summary judgment is not a per se denial of

constitutional rights to due process. (Appellee's Brief pp.45-48) However, a review

of the cases cited by the Board does not support the District Courts action in this

case. For example, in *Meyer v. AmerisourceBergen Drug Corp.*,264 Fed.Appx. 470

Slip op *8, 2008 WL 397412 (6th Cir. 2008) this Court did not reverse such a

ruling "when the legal issue has already been fully briefed and no factual dispute

exists, that party has not been prejudiced by the court's noncompliance with Rule

56(c)." However as pointed out already neither party had briefed these issues or

could contemplate the District Court taking such action.

A somewhat similar situation happened in *Turcar, LLC v. I.R.S.* 451

Fed.Appx. 509, Slip Op. at *4 2011 WL 6224533 (6th Cir. 2011) In that case the

Plaintiff was on notice that the chain of title before the district court was facially

insufficient to support its claims. In light of this fact this Court did not reverse the

sua sponte ruling based on this fact since there was no prejudice to the non-moving

party.

The next case was cited by the Board several times. In *Excel Energy, Inc. v.*

*Cannelton Sales Co.*246 Fed.Appx. 953, Slip Op.at *6, 2007 WL 2426436 (6th Cir.

2007), a panel of the Sixth Circuit permitted the sua sponte granting on a breach of

contract claim pointing out that "the record indicates that Plaintiff perceived

Defendants' motion for summary judgment as covering more than the issue of

successor-in-interest liability." Id.  This was not the case in this appeal which the

Board admits to being surprised as was Mrs. Smith by the decision of the Court.

More importantly, in  *Excel Energy, Inc*  the panel was also faced by another

part of the lower court ruling granting summary judgment sua sponte, but the

parties had not briefed this particular issue. This is identical to the facts in Mrs.

Smith's case and because of this reason it reversed the District Court stating:

> These considerations weigh differently, however, on the
> question of whether the district court appropriately granted
> summary judgment on Plaintiff's breach of the implied
> covenant of good faith and fair dealing claim. This Court
> has repeatedly found an abuse of discretion where the
> district court *sua sponte* grants summary judgment on an
> issue on which the parties have provided little or no
> argument. *See, e.g., Shelby County Health Care Corp.,* 203
> F.3d at 933 (holding that the district court erred in granting
> summary judgment as to the amount of benefits owed to the

plaintiff where the parties' briefs only addressed the issue of liability); *GBJ Corp.*, 139 F.3d at 1089-90 (holding that the district court abused its discretion by granting summary judgment in favor of the defendants on the plaintiffs' second cause of action where the defendants' memorandum accompanying their motion did not state any reason why the plaintiffs' second cause of action should be dismissed); *cf. Employers Ins. of Wausau,* 69 F.3d at 104 ("[C]onclusory statements offered at the beginning and end of a memorandum of law are clearly not a motion [for summary judgment].").

*Excel Energy, Inc.,*246 Fed.Appx. 953, Slip Op.at \*6

3. **Carol Smith was prejudiced by the District Court Granting on Alternative Grounds than the Board's Summary Judgment Motion.**

The status of this case, where Mrs. Smith's discovery had not begun, prejudices her when faced with rulings on the merits being granted sua sponte by the District Court. The Board is correct in arguing that as prevailing party it may assert any grounds supporting judgment. However, the reviewing court may only rule on an alternative basis provided it "proceeds carefully so the opposing party is not denied an opportunity to respond to the new theory." *Herm v. Stafford,* 663 F.2d 669, 684 (6th Cir.1981).

Here, as discovery was not yet begun by Mrs. Smith when the Board filed its motion for summary judgment, she *would* be prejudiced if this Court affirmed the District Court's view that Count two can be dismissed on the merits, and count

four inadequately pled. The merits of count two and count four were not allowed to be addressed at all, as discovery was not allowed. Therefore, the alternative basis' advanced by the Board should not be ruled upon until Mrs. Smith has been given an opportunity to conduct discovery and respond.

Further, Mrs. Smith has a right to file, under Rule 56 of the Federal Rules of Civil Procedure which was amended, inter alia, to place the provisions of former subdivision (f) in subdivision (d), "without substantial change" Fed.R.Civ.P. 56, Advisory Committee Notes, 2010 Amendments (effective December 1, 2010), a request for a continuance for the filing of her response until discovery was completed.

Subdivision (d) of Rule 56 now provides as follows:

> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed.R.Civ.P. 56(d) (2010) (formerly Rule 56(f)).

The protection afforded by Rule 56(d) is an alternative to a response in opposition to summary judgment under Rule 56(e) and is designed to safeguard

against a premature or improvident grant of summary judgment. 10A Wright,

Miller, and Kane, *Federal Practice and Procedure* § 2740 (1983).

As in this case, if a party cannot adequately defend such a motion, Rule

56(d) is her remedy. *New America Shipbuilders, Inc. v. United States,* 871 F.2d

1077, 1081 (Fed.Cir.1989); *Reflectone, Inc. v. Farrand Optical Co., Inc.*, 862 F.2d

841, 843–44 (11th Cir.1989); *American Nurses Association v. State of Illinois,* 783

F.2d 716, 729 (7th Cir.1986); *Weir v. Anaconda Co.*, 773 F.2d 1073, 1081 (10th

Cir.1985); *United States of America, acting Through the Small Business

Association v. Light*, 766 F.2d 394, 397 (8th Cir.1985).

In the 56 (d) motion, Mrs. Smith would have had the opportunity to describe

the types of evidence necessary to respond to such legal issues. For example:

> 1. Obtaining an affidavit from her forensic psychiatrist expert
> Dr. Joel Steinberg concerning his opinion on  a) concerning
> her physical conditions and if she was disabled based on the
> language of the ADA; b)the types of reasonable
> accommodations that would have allowed her to perform her
> teaching job successfully; c) the impact on the failure of the
> Board to implement even the limited accommodations and if
> the full implementation would have been adequately allowed
> her to be successful at her teaching job; d) what diagnosis
> concerning her mental  health and distress and the causal
> connection with the conduct of the Board and other individual
> defendants; e) the type of emotional distress suffered as a
> result of the conduct of the individual defendants including the
> evaluations, lack of support, disciplinary action and public
> termination for a teacher who had been in this small
> community her whole life and if this was objectivity and
> medically certain to be so outrageous to meet the legal stand
> for a intentional infliction claim.

2. Conducting written discovery on such subjects such as other employees requests for reasonable accommodations and how they were treated; other employees who were disciplined, the types of accommodations given; whether the Board had any policies on the ADA, any complaints filed under the ADA with a federal or state civil rights agency; copies of her personnel records and other teachers who were similarly situated to her for comparison.

3. Depositions of the individual defendants to be deposed on the range of the claims raised in her complaint.

These are only examples of the type of information denied to Mrs. Smith by the action of the District Court in granting summary judgment in this manner. The District Court, by granting sua sponte summary judgment, prejudiced Mrs. Smith's rights under Rule 56 (d). This Court should therefore reverse and remand these two claims to the District Court for these reasons.

4. **Carol Smith was prejudiced by the District Court Granting on Alternative Grounds than the Board's Summary Judgment Motion Her Intentional Infliction of Emotional Distress Claim Against Defendants' Gunner and Finn.**

As already discussed in Section C 3 *infra* of this brief, Mrs. Smith was prejudiced by the lack of discovery and the sua sponte granting of summary judgment on this claim. Evidence that could have been developed has been denied to her by the way the District Court decided to make its summary judgment ruling. Expert opinion and lay witness testimony, including that of the defendants, is essential to defending her claim against summary judgment on the merits.

The Board argues that the District Court may have been considering Mrs. Smith's intentional infliction of emotion distress claim under F.R.C.P, Rule 12 (b) (6) standard rather than summary judgment. (Appellee's Brief p. 50-51). It should be pointed out that, in any event, the sua sponte dismissal under such standard violates Mrs. Smith's due process rights and her ability to amend the complaint under F.R.C.P. Rule 15 ( c ). *Neitzke v. Williams*, 490 U.S. 319, 329-30 (1989) (plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon.)

As to the substantive issue of whether Mrs. Smith can state a claim for intentional infliction of emotional distress at this early stage of the litigation the answer should be in the affirmative. In *Yeager v. Local Union 20, Teamsters*, the Ohio Supreme Court established the tort of intentional infliction of serious emotional distress.  In doing so the court adopted the standard set forth in the *Restatement of the Law 2d. Torts,  Yeager v. Local Union 20, Teamsters*, 6 Ohio St.3d 369, 374 (1983),  quoting *Restatement of the Law 2d, Torts* (1965) 71, Section 46(1).

The Board argues that as a matter of law Mrs. Smith cannot establish "extreme and outrageous conduct" sufficient to meet this legal standard in the Statement. (Appellee's Brief pp. 51-52) Since the Ohio Supreme Court adopted the

*Restatement of the Law 2d. Torts* in establishing this tort, an examination of what

evidence can be used to prove such a claim will provide guidance on this question.

The *Restatement of the Law 2d. Torts,* Outrageous Conduct Causing Severe

Emotional Distress §46 (April 2012) states that:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

> (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

In describing the elements of such conduct the treatise provides some helpful

illustrations:

> c. The law is still in a stage of development, and the ultimate limits of this tort are not yet determined. This Section states the extent of the liability thus far accepted generally by the courts.

> e. **The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests.** Thus an attempt to extort money by a threat of arrest may make the actor liable even where the arrest, or the threat alone, would not do so. **In particular** police officers, **school authorities**, landlords, and collecting creditors **have been held liable for extreme abuse of their position.**

f. **The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity**.

i. Intention and recklessness. The rule stated in this Section applies where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct. It applies also where he acts recklessly, as that term is defined in § 500, in deliberate disregard of a high degree of probability that the emotional distress will follow Id. [emphasis added]

In this case, Carol Smith prior to the hiring of Mr. Gunner as School Superintendent had no disciplinary actions during her more than 30 years of employment. (RE #22 Affidavit of Carol Smith at ¶¶ 5-6) After Mr. Gunner was hired his attitude was that Mrs. Smith was the oldest teacher and too expensive, and he even stated to her that the school "could have two and a half teachers for your salary." After finding out that Mrs. Smith was not interested in retiring, Mr. Gunner and Mr. Finn began a series of false accusations and harassment starting with a October 6, 2008 letter where she was accused of sleeping during school time and leaving students unsupervised. As a result Mrs. Smith hired a lawyer to request reasonable accommodations, but Mr. Finn and Mr. Gunner instead refused to grant an effective set of reasonable accommodations, and chose to ignore even their much more limited accommodations to punish her. Mr. Gunner violated the

collective bargaining agreement by demanding that Mrs. Smith take a psychiatric examination by a school paid consultant.  This was stopped only after she grieved this illegal conduct to protect her contractual rights. (Id. at ¶¶ 28).   When Mrs. Smith explained she had a serious eye problem, Mr. Gunner told her to, "tell me another one." Instead of trying to assist Carol Smith, Mr. Gunner treated her as an old relic instead of a valuable, long-term employee. When she continued to work, she was subjected to a series of suspensions by Mr. Gunner which were baseless, and only used to further his plan to force her to retire or be used as the reason for Mrs. Smith ultimate termination. (Id. ¶¶ 11-13, 15, 20, 29, 30-32, 34, 36 and 39). Instead of trying to help and provide reasonable accommodations, they just recklessly disregarded her rights having other teachers, administrators and even students constantly observing her and reporting back to the administration. (Id. at ¶¶ 21-23, 26, 29-33, 36, 40 and 41).

Another example, the placement of teaching assignments which required Mrs. Smith to go from one floor to the other with only four minutes between classes. Carol's granddaughter had to help her to try to walk between classes because she had to wait until all the students had left to lock the room and then try to still be in the next class all in 4 minutes. There was no help for her by Mr. Gunner and his assistants ---just another way to pressure Carol to retire or make up a reason for discipline and termination. (Id. at ¶ 34).  Finally, Mr. Gunner publicly

accused her of pornography in order to force her termination. (Id. at ¶ 37-38). He slandered a long time teacher's good name that had taken many years to build and resulted in her suffering serious mental health issues as a direct result of this conduct.

Dr. Joel Steinberg, a forensic psychiatrist, prepared an IME report dated January 4, 2011 which was submitted to the Board's attorneys. Mr. Steinberg would have testified to his conclusion that Mrs. Smith developed significant depressive symptoms and some milder anxious symptoms in response to the situations described above. He diagnosed Carol Smith as having **Adjustment Disorder with Anxiety and Depressed Mood**. He would have testified that the recurrence of the adjustment disorder with anxiety and depressed mood was within a reasonable degree of medical probability a **direct and proximate result** of the various situations that Mrs. Smith experienced at the hands of Mr. Gunner and Mr. Finn.

There are numerous cases that provide similar facts where the state and federal courts have found a valid claim for intentional infliction of emotional distress. For example:

> *Gordon v. Matthew Bender & Co., Inc.*, 562 F. Supp. 1286, 115 L.R.R.M. (BNA) 4100 (N.D. Ill. 1983) (applying Illinois law), an action by a former employee against his employer for intentional infliction of emotional distress, denied the employer's motion to dismiss the count for intentional infliction of emotional distress. The employee alleged that

the employer's termination was motivated by malice and was intended
to, and did, inflict emotional harm on him, and he further alleged that as
a result of the malicious termination, he suffered a profound loss of self-
esteem, mental depression, and multiple somatic repercussions. The
court stated that the employee had alleged that the employer acted with
intent to inflict emotional harm on him, and his allegations of malice and
profound mental and physical harm were equivalent to allegations of
outrageousness and severe emotional distress.

*Censullo v. Brenka Video, Inc.*, 989 F.2d 40, 8 I.E.R. Cas. (BNA) 693,
124 Lab. Cas. (CCH) ¶57313 (1st Cir. 1993) (applying New Hampshire
law). The plaintiff employee sued the defendant employer and a
coworker acting as supervisor for wrongful termination with related
intentional infliction of emotional distress, the federal district court
entered judgment for the employee on the wrongful termination ground
but did not require the employer to indemnify the coworker for judgment
on a claim of intentional infliction of emotional distress, and the court,
on review, held, inter alia, that while the plaintiff's intentional infliction
of emotional distress was viable.

*Shannon v. MTA Metro-North R.R.*, 269 A.D.2d 218, 704 N.Y.S.2d 208
(1st Dep't 2000), where the court held that a railroad employee stated a
claim for the intentional infliction of emotional distress against the
defendant employer and other defendants by alleging that the defendants
intentionally and maliciously engaged in a pattern of harassment,
intimidation, humiliation and abuse, causing him unjustified demotions,
suspensions, lost pay and psychological and emotional harm over a
period of years.

*Petersen v. Sioux Valley Hosp. Ass'n*, 486 N.W.2d 516, 7 I.E.R. Cas.
(BNA) 1562, 125 Lab. Cas. (CCH) ¶57383 (S.D. 1992), on reh'g, 491
N.W.2d 467, 7 I.E.R. Cas. (BNA) 1568 (S.D. 1992). An employee sued
the defendant hospital, the lower tribunal entered summary judgment in
favor of the hospital, and the court, on review of the former employee's
appeal, affirmed in part, reversed in part, and remanded, the court

holding, inter alia, that whether the supervisor's actions in the employee's termination were intentionally extreme or outrageous was a fact question.

*Ely v. Wal Mart, Inc.*, 875 F. Supp. 1422 (C.D. Cal. 1995) (applying California law).The plaintiff former employee was held by the court to have stated a sufficient claim for intentional infliction of emotional distress for discharge based on a demotion and eventual discharge following a medical leave, which was in contravention of public policy, and for allegedly false statements to a prospective employer about the employee after the employee's discharge.

*Malone v. Safeway Stores, Inc.*, 698 F. Supp. 207, 2 I.E.R. Cas. (BNA) 1470 (D. Or. 1987) (applying Oregon law).An action by a discharged employee against a former employer who allegedly insulted, ridiculed, and criticized the employee in front of other employees, and scheduled the employee for work shifts that the employer knew conflicted with his religious obligations, the court held that summary judgment for the employer on the employee's claim for intentional infliction of emotional distress would be denied, the court reasoning that the employee's claim alleged more than simple wrongful discharge and thus was not preempted by federal law governing suits for violation of labor contracts.

While the above cases are not from Ohio, they all are based on the same *Restatement of the Law 2d, Torts* (1965) which was adopted by the Ohio Supreme Court in *Yeager v. Local Union 20, Teamsters*, 6 Ohio St.3d 369, 374 (1983).

Considering the above case law and the facts which were provided by Mrs. Smith by Affidavit to the District Court, this Court should reverse the granting of summary judgment. Carol Smith on remand should be permitted to amend her complaint, if necessary, to add the statements she made in her Affidavit.

**D.    CONCLUSION**

Appellant Carol Smith is not barred from litigating her claims by the Ohio

Teacher Termination decision. Further, she can establish genuine issues of material

fact in regard to all aspects of her ADA and intentional infliction of emotional

distress claims, and therefore the Opinion and Order of the District Court granting

summary judgment should be reversed and this cause remanded for discovery and

a trial on the merits.

<div style="margin-left:40%">Respectfully,</div>

<div style="margin-left:40%">/s/ Edward G. Kramer<br>
EDWARD G. KRAMER (0024873)<br>
KRAMER & ASSOCIATES, L.P.A.<br>
3214 Prospect Avenue, East<br>
Cleveland, Ohio 44115-2600</div>

<div style="margin-left:30%">Attorneys for Appellant</div>

## CERTIFICATE OF SERVICE

The forgoing Corrected Plaintiff- Appellant's Reply Brief was filed
electronically on September 21, 2012. All parties of record shall receive
notification though the operation of the Court's electronic docketing system.

/s/ Edward G. Kramer
EDWARD G. KRAMER (0024873)
Kramer & Associates, LPA
3214 Prospect Avenue
Cleveland, Ohio 44115
216-431-5300 ext 2224

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains  7467  words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief also complies with

the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style

requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a

proportionally spaced typeface using Microsoft Word 2007 in 14 point Times New

Roman font.


/s/ Edward G. Kramer
EDWARD G. KRAMER